```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
RUNAWAY DEVELOPMENT GROUP, S.A.,

                Plaintiff(s),

      - against -                           91 Civ. 5643 (JES)

PENTAGEN TECHNOLOGIES INTERNATIONAL         MEMORANDUM OPINION
LIMITED, ET AL.,                                AND ORDER

                Defendant(s).
----------------------------------------X
```
**SPRIZZO, D.J.:**

The present controversy involves the question of whether judgment creditor Pentagen Technologies International Ltd. ("Pentagen" or "creditor") may obtain by motion in the above-captioned action an Order of Turnover for computer software allegedly in the possession of third-party transferee United States of America ("Government" or "transferee") pursuant to Article 52 of the New York Civil Practice Law and Rules. Because this motion is the improper vehicle for seeking this relief, and because Pentagen is barred, for a variety of reasons, from seeking this relief from the Government, this Court denies Pentagen's motion.

## BACKGROUND

This action, which was commenced in 1991, involved a dispute about the ownership of the MENTIX software program. That dispute was settled by a 1993 Stipulation and Order in which plaintiff Runaway Development Group, S.A. and its affiliates consented to entry of judgment against them and agreed to deliver to Pentagen all copies of MENTIX and its documentation. See Stipulation and Orders for Amendment of Pleadings and Judgments, dated Aug. 2, 1993.

Emboldened by its success in this action, Pentagen proceeded to bring a number of suits against, inter alios, CACI International, Inc. ("CACI"), Pentagen's former business associate, alleging copyright infringement, conversion, and violations of the False Claims Act, see, e.g., United States ex rel. Pentagen Techs. Int'l, Ltd. v. CACI Int'l Inc., No. 96-7827, 1997 U.S. Dist. LEXIS 12244, 1997 WL 473549 (S.D.N.Y. Aug. 18, 1997); Pentagen Techs. Int'l, Ltd.

v. CACI Int'l Inc., Nos. 93-8512, 94-441, 94-8164, 1996 U.S. Dist. LEXIS 9903, 1996 WL 435157, at *1-7 (S.D.N.Y. Aug. 2, 1996); United States ex rel. Pentagen Techs. Int'l Ltd. v. CACI Int'l Inc., No. 94-2925, 1995 U.S. Dist. LEXIS 17512, 1996 WL 11299 (S.D.N.Y. Jan. 4, 1996); CACI Int'l Inc. v. Pentagen Techs. Int'l, Ltd., No. 93-1631-A, 1994 WL 1752376, 1994 U.S. Dist. LEXIS 21457, at *1-11 (E.D. Va. June 16, 1994), and the Government, alleging abuse of process, conversion, and copyright infringement, see, e.g., Pentagen Techs. Int'l Ltd. v. United States, 175 F.3d 1003 (Fed. Cir. 1999); Pentagen Techs. Int'l Ltd. v. United States, No. 01-3078, 2002 WL 465308, 2002 U.S. Dist. LEXIS 5030 (S.D.N.Y. Mar. 26, 2002); Pentagen Techs. Int'l Ltd. v. United States, 103 F. Supp. 2d 232 (S.D.N.Y. 2000).

Despite bringing "a seemingly endless series of lawsuits," Pentagen, No. 01-3078, 2002 U.S. Dist. LEXIS 5030, at *4, before no less than seven federal judges, Pentagen failed in each of its attempts to show that CACI or the Government infringed or converted the MENTIX software. See, e.g., id. at *4-8; Pentagen Techs. Int'l Ltd. v. United States, 172 F. Supp. 2d 464, 468-70 (S.D.N.Y. 2001). Finally, by Memorandum Opinion and Order dated November 5, 2001, this Court, faced with Pentagen's "vexatious litigation strategy and needless occupation of judicial resources," enjoined Pentagen from filing further litigation without permission of the Court. Pentagen, 172 F. Supp. 2d at 474.

Faced with an inability to bring another suit, and armed with allegedly new evidence that purports to show that the Government received an alternative version of MENTIX which it has failed to return, see Mem. in Supp. at 2-9, Pentagen breathed new life into this action by filing a motion, dated April 29, 2005, in which it seeks to force the Government to return "all versions of software known as MENTIX in the possession of the United States," id. at 1. The Government submitted a response dated June 7, 2005, and the Court heard Oral Argument on creditor's Motion on July 18, 2005.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 69(a) "[t]he

procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held." Fed. R. Civ. P. 69(a). Article 52 of the New York Civil Practice Law and Rules governs the enforcement of judgments in New York, and therefore is applicable here. See N.Y. C.P.L.R. art. 52; Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A., 190 F.3d 16, 20, 21 n.4 (2d Cir. 1999).

Section 5225 sets forth the procedures for the return of property. Under section 5225(a), a judgment creditor can seek turnover of property held by the judgment debtor "[u]pon motion" in the original action. N.Y. C.P.L.R. 5225(a). However, when the property sought is in the possession of someone other than the judgment debtor, the judgment creditor must follow the procedure set forth in section 5225(b), which requires that the creditor "commence an action against the person in possession," Alliance Bond Fund, Inc., 190 F.3d at 21, instead of merely filing a motion in the original action, see N.Y. C.P.L.R. 5225(b); David D. Siegel, Practice Commentaries, N.Y. C.P.L.R. 5225, at 264–65 (McKinney 1997) (explaining that subsection (b) requires a special proceeding "bearing its own caption").

In this case, the Government contends that "Pentagen cannot proceed by mere motion against the Government to enforce its judgment against Runaway" and therefore "Pentagen's motion should be denied." Mem. in Opp'n at 15.

This Court agrees. Pentagen now seeks the turnover of the MENTIX software from the Government, a non-party to this action. Because Rule 69(a) of the Federal Rules of Civil Procedure dictates that state procedures be followed, and because section 5225(b) is applicable to this situation, Pentagen is required to commence a new action against the Government in order to attain the sought-after relief. Therefore the present motion is an improper vehicle for seeking this relief and must be denied.

In addition to this procedural defect, the Government asserts

3

that a number of additional bars preclude the relief that Pentagen seeks. The Government argues that any suit based on this subject matter would be barred by sovereign immunity and by the doctrines of claim and issue preclusion.

Under the doctrine of sovereign immunity, the "United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The United States has consented to suit pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, which provides for "final agency actions to be reviewed by federal courts if there is a claim 'that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority,' and the relief sought is other than money damages," U.S. Envtl. Prot. Agency v. Gen. Elec. Co., 197 F.3d 592, 598 (2d Cir. 1999) (quoting 5 U.S.C. § 702).[1]

Here, Pentagen asserts that the Government's failure to turnover MENTIX is final agency action. See Mem. in Supp. at 16; Tr., dated July 18, 2005, at 5.

That argument is dubious at best. In order to be deemed final agency action, "'the action must mark the consummation of the agency's decisionmaking process.'" New York v. U.S. Envtl. Prot. Agency, 350 F. Supp. 2d 429, 434 (S.D.N.Y. 2004) (quoting Bennett v. Spear, 520 U.S. 154, 177-78 (1997)). Paradigmatic examples of final agency actions include agency rules and rulemaking procedures, see, e.g., id. at 435 (collecting cases), as well as specific agency decisions, see, e.g., 17 U.S.C. § 701(e). Here, unlike in the typical APA case, the Government's actions are not the result of its "decisionmaking process," and they do not reflect a process whereby the Government had "a full opportunity to consider and correct its own mistakes," Sec. & Exch. Comm'n ex rel. Glotzer v. Stewart, 374 F.3d 184, 192 n.8 (2d Cir. 2004). Rather, the Government has failed to return MENTIX to Pentagen because, as it has repeatedly indicated,

---

[1] Although the Government has consented to suit in a variety of other statutes, Pentagen has relied solely on the APA as the source of sovereign immunity waiver here. See Mem. in Supp. at 15-16.

4

it does not possess MENTIX and, if it once did, it currently has no knowledge as to the whereabouts of the software. See Mem. in Opp'n at 17; Tr. at 14-15; Mem. in Supp. of Mot. to Quash, dated Oct. 4, 2004 ("Mot. to Quash"), at 8; Mot. to Quash, Ex. A, Certification of Guri Glass, dated Apr. 19, 2004; Mot. to Quash, Ex. B, Resp. to Court Directed Interrog., dated June 10, 2004. The Government's failure to produce something that it does not have is simply not final agency action reviewable under the APA.[2]

Pentagen's reliance on Levitt v. Fed. Bureau of Investigation, 70 F. Supp. 2d 346 (S.D.N.Y. 1999), is unpersuasive. In Levitt, the FBI acknowledged that it possessed a sculpture in which it had no ownership interest. Id. at 347. Despite the availability of an interpleader action to resolve the dispute, Judge Kaplan found that sovereign immunity had been waived under the APA, presumably after assuming that the FBI's failure to return the sculpture constituted final agency action. Id. at 348-50. Assuming arguendo that Levitt correctly stands for the proposition that the Government's failure to turnover property in its possession is final agency action, see id.; see also Marshall Leasing, Inc. v. United States, 893 F.2d 1096, 1098-1100 (9th Cir. 1990), that finding is simply not persuasive here because the Government has repeatedly indicated that it does not have MENTIX and that it has no knowledge as to its whereabouts. See supra.

Finally, assuming that Pentagen could bring this action against the Government, this suit would be barred by the doctrines of claim and issue preclusion.

Claim preclusion operates to bar claims that arise from the same set of operative facts as a previous claim between the same parties which has been resolved by a final judgment on the merits. See Corbett v. MacDonald Moving Servs., Inc., 124 F.3d 82, 87-90 (2d Cir. 1997); Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 90-91

---

[2] The Court notes that the proper way for creditor to get information regarding the Government's possession of MENTIX would be to make a request under the Freedom of Information Act, 5 U.S.C. § 552. Unsurprisingly, Pentagen has already availed itself of this tool. See, e.g., Pentagen Techs. Int'l Ltd. v. United States, No. 98-4831, 2000 WL 347165, 2000 U.S. Dist. LEXIS 4146 (S.D.N.Y. Mar. 31, 2000).

5

(2d Cir. 1997).

Here, Pentagen seeks relief that is identical to the relief that it sought against the Government in an action filed in 2001. See Pentagen Techs. Int'l Ltd. v. United States, No. 01-3078, 2002 WL 465308, 2002 U.S. Dist. LEXIS 5030, at *15-16 (S.D.N.Y. Mar. 26, 2002). Judge Stein, in dismissing that action, in part based on the preclusive effect of a judgment issued by the Court of Federal Claims, see Pentagen Techs. Int'l Ltd. v. United States, 175 F.3d 1003 (Fed. Cir. 1999), ruled that "any request for the physical return of the software used in the government's test arises from the same transaction, and Pentagen cannot raise the claim now after failing to do so in the Court of Federal Claims action," Pentagen, No. 01-3078, 2002 U.S. Dist. LEXIS 5030, at *16.

Issue preclusion operates to bar "the relitigation of issues actually litigated and decided in the prior proceeding, as long as that determination was essential to that judgment," Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir. 1995), and there was "a full and fair opportunity for litigation in the prior proceeding," Levy v. Kosher Overseers Assoc. of Am., Inc., 104 F.3d 38, 41 (2d Cir. 1997).[3]

In this case, in order to successfully seek turnover of MENTIX from the Government, Pentagen would need to prove that "[its] rights to [MENTIX] are superior to those of the [Government]." N.Y. C.P.L.R. 5225(b). A number of courts have already passed upon this question, and each time have determined that Pentagen has no enforceable rights to MENTIX as against the Government or its purported transferor, CACI. For example, following a ruling that there was no evidence that CACI had engaged in copyright infringement, CACI Int'l Inc., 1994 U.S. Dist. LEXIS 21457, at *14, Judge Mukasey determined that

---

[3] Cases applying the New York law of issue preclusion indicate that the Court should consider the availability of new evidence in determining whether there was a full and fair opportunity to litigate in the prior proceeding, see, e.g., Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 734 (2d Cir. 2001), whereas cases applying federal law are seemingly silent as to this factor, see, e.g., Mario Valente Collezioni, Ltd. v. AAK Ltd., No. 02-99, 2004 WL 724690, 2004 U.S. Dist. LEXIS 5049, at *9-11 (S.D.N.Y. Mar. 26, 2004). Regardless of the applicable law, as discussed infra Pentagen's "new" evidence does not call into question the fairness of the earlier proceedings.

6

**APPEARANCES**


A.M. RICHARDSON, P.C.
Attorneys for Judgment Creditor Pentagen
Technologies International Limited
40 Wall Street, 35th Floor
New York, NY 10005

    AMBROSE M. RICHARDSON, III, ESQ.

        Of Counsel


MICHAEL J. GARCIA
UNITED STATES ATTORNEY,
SOUTHERN DISTRICT OF NEW YORK
Attorney for United States of America
86 Chambers Street, 3rd Floor
New York, NY 10007

    ROBERT W. SADOWSKI
    ASSISTANT UNITED STATES ATTORNEY

        Of Counsel

Pentagen could not state a valid conversion claim against CACI, Pentagen, Nos. 93-8512, 94-441, 94-8164, 1996 WL 435157, at *14. Based on these earlier rulings, Judge Stein determined that Pentagen was barred from bringing a conversion claim against the Government "[b]ecause it has been decided that Pentagen has no claim for conversion or copyright infringement against CACI in relation to CACI's marketing of software to the government." Pentagen, No. 01-3078, 2002 U.S. Dist. LEXIS 5030, at *17-18.

In addition, Pentagen cannot avoid the issue preclusive effect of these determinations by claiming that there is new evidence that was not available in the prior proceedings. Pentagen's new evidence, the April 2000 deposition of Mr. Edgar F. Brasseur, see Mem. in Supp. at 2, has already been passed upon by two courts and has been deemed insufficient to overcome the previous rulings. See Pentagen, No. 01-3078, 2002 U.S. Dist. LEXIS 5030, at *18; Pentagen, 103 F. Supp. 2d at 238. Additional depositions taken by Pentagen are of a similar character and they do not call into question the fairness of the prior proceedings.

In sum, Pentagen's motion is improperly brought, barred by sovereign immunity, and precluded by a multitude of previous actions and rulings. Given the injunction issued against Pentagen, Pentagen, 172 F. Supp. 2d at 474, and the series of adverse rulings in this and related cases, it is this Court's hope that this is the final word in an affair that has become an obsession for some and a thorn in the side of the federal courts.

## CONCLUSION

Based on the foregoing, Pentagen's Motion to Order Turnover shall be and hereby is denied.

Dated:  New York, New York
        October 31, 2005

John E. Sprizzo
United States District Judge

7